[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13950

_____



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 0:08-cv-60639-JIC

DOLORES MILLETTE,

Plaintiff-Appellant,

versus

BILLIE TARNOVE, individually,

Defendant-Appellee,

NADEAU GENERAL CONTRACTORS, INC.,
a Florida corporation,

Defendant - Appellee,
Garnishee -Third Party Plaintiff,

DEK TECHNOLOGIES, INC., a Florida corporation,
WEBSTER BANK, N.A., a National Banking Association,
PABLO CAMUS, individually,
STEVE LAMBERT, individually,
ROBERT IMPERATO, individually,

Defendants,

STEVEN CUMMINGS,

Defendant-
Third Party Defendant,

TODD MITCHELL SMITH,

Third Party Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 22, 2011)

Before PRYOR and COX, Circuit Judges, and PANNELL,[*] District Judge.

PER CURIAM:

The appeal in this diversity action presents issues involving two claims tried to a jury in the district court: (1) Dolores Millette's negligence claim against Nadeau General Contractors, Inc. ("Nadeau") for defective and incomplete construction of her house in North Port, Florida; and (2) Millette's claim against Billie Tarnove for breaching her fiduciary duty as closing agent for the purchase of the property on which Millette's home was to be built.

_____

[*]Honorable Charles A. Pannell, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

Before the case was submitted to the jury, the district court, acting pursuant to Fla. Stat. § 768.81, permitted Nadeau to identify several nonparties on the verdict form for the purpose of apportioning fault in Millette's negligence claim against Nadeau. The jury verdict fixed Millette's damages at $225,000, but only apportioned 5% of the fault to Nadeau. The court then entered judgment on the jury verdict for Millette and against Nadeau in the amount of $11,250 (5% of the damages). Millette contends the court erred in identifying various nonparties on the verdict form for the purpose of apportioning fault. We agree.

At the conclusion of Millette's case-in-chief, the district court granted Tarnove's Rule 50(a) motion for judgment as a matter of law. Millette contends this was error. We agree.

## I.   ISSUES ON APPEAL

Millette presents the following issues on appeal: (1) whether the district court erred in permitting Nadeau to identify nonparties on the verdict form for the purpose of apportioning fault under Fla. Stat. § 768.81; and (2)  whether the district court erred in granting Tarnove's Rule 50(a) motion.[1]

---

[1]   Millette also raises three other issues: (1) whether the district court erred in awarding attorney's fees to Tarnove under Fla. Stat. § 768.79; (2) whether the district court abused its discretion in excluding evidence that Tarnove did not record the satisfaction of pre-existing mortgages on Millette's property until December 2006; and (3)  whether the district court erred in instructing the jury on the measure of damages in Millette's claim against Nadeau.

We do not address issue one because, on this record, Tarnove is not entitled to a Rule 50(a)

3

## II.   STANDARDS OF REVIEW

We review a district court's determinations of state law de novo. *Bearint ex rel. Bearint v. Dorel Juvenile Grp., Inc.*, 389 F.3d 1339, 1345 (11th Cir. 2004) (citation omitted).

We review a Rule 50 motion for judgment as a matter of law de novo, and apply the same standards employed by the district court. *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000) (citation omitted).  "In doing so, we consider all the evidence in the light most favorable to the non-moving party, and independently determine whether the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict." *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1029 (11th Cir. 2008) (citation omitted and omission in original).

---

judgment as a matter of law, and the award of attorney's fees is based on such a judgment.  We will, therefore, vacate the award of attorney's fees and costs in favor of Tarnove.  As to issue two, we find no error in the district court's exclusion of evidence of the date Tarnove recorded the satisfaction of the mortgages.  Considering Millette suffered no damages from the delay in the recording of the mortgages, the district court did not abuse its discretion in excluding the evidence pursuant to Federal Rule of Evidence 403.  As to issue three, any error in the court's jury instructions regarding a contractual measure of damages was harmless.  In addition to providing an instruction on a contractual measure of damages, the court also instructed the jury that it could award damages in "the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of Millette's damages." (Dkt. 472 at 11.)  Viewing the jury charges as a whole, we cannot say that the jury was confused or misguided by the damages instruction.

## III. DISCUSSION

A.     Apportionment of Fault Under Fla. Stat. § 768.81

The Supreme Court of Florida has held that the comparative fault statute, Fla. Stat. § 768.81, permits a defendant in a negligence action to seek apportionment of a plaintiff's damages among nonparties based on percentage of fault. *Fabre v. Marin*, 623 So. 2d 1182, 1185 (Fla. 1993); *see also Nash v. Wells Fargo Guard Servs.*, 678 So. 2d 1262, 1263 (Fla. 1996). The district court permitted Nadeau to identify the following nonparties on the verdict form for the purpose of apportioning fault to these nonparties: Pablo Camus/DEK Technologies Inc., Webster Bank, and Todd Smith/Steve Cummings.[2]

Before addressing Millette's arguments as to why the district court erred in including these nonparties on the verdict form, we note that Nadeau has not met the pleading requirements of § 768.81. Section 768.81 requires that "[i]n order to allocate any or all fault to a nonparty, a defendant must affirmatively plead the fault of a nonparty. . . ." Fla. Stat. 768.81(3)(a); *see also Nash*, 678 So. 2d at 1264. In this

---

[2] Millette sued Pablo Camus and DEK in this case. Those claims were settled prior to trial through a mediated consent judgment. The consent judgment ordered Camus to pay $242,000 for breach of contract and ordered DEK to pay $400,000 for breach of contract and fraudulent misrepresentation.

The nonparties on the verdict form included people or entities that previously had been defendants or third-party defendants in the case, but none of them were still parties at the time they were listed on the verdict forms.

case, Nadeau's Answer alleged in conclusory fashion that various nonparties were responsible for Millette's damages; Nadeau alleged no facts showing why a particular nonparty should be apportioned fault.[3] Similarly, Nadeau's Joint Pretrial Stipulation did not describe the conduct of each nonparty that supports apportioning fault to that nonparty.[4] Because of these pleading deficiencies, we cannot definitively determine whether a particular nonparty should have been on the verdict form for the purpose of apportioning fault. We can, however, decide several issues that do not depend on the sufficiency of Nadeau's pleadings. Our resolution of some of these issues requires a new trial on the apportionment of fault. On remand, in order for Nadeau to apportion fault to a nonparty, Nadeau must plead facts showing that apportionment of fault is appropriate for each nonparty to be on the verdict form.

---

[3] Nadeau's Answer alleged the following:

> Pursuant to *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993) and *Nash v. Wells Fargo Guard Serv*ices, *Inc.,* 678 So. 2d 1262 (Fla. 1996), Defendant is not responsible for Plaintiff's alleged damages, in whole or in part, to the extent that the damages, if any, were caused by the negligence, fault and/or responsibility of Webster Bank, N.A., Pablo Camus, DEK Technologies, Inc., Steven Cummings, and Todd Mitchell Smith.

(Dkt. 178 at 6, ¶ 4.)

[4] The Joint Pretrial Stipulation included Nadeau's "Statement of the Case," but Nadeau did not articulate why each nonparty should be apportioned fault. (Dkt. 396 at 5.)

1.    Submission of intentional-tortfeasor question to the jury

Fla. Stat. § 768.81(4)(b) prohibits apportionment of fault to nonparties whose intentional torts resulted in a plaintiff's damages. *See Merrill Crossings Assocs. v. McDonald*, 705 So. 2d 560, 562 (Fla. 1997). Some of Camus/DEK's conduct in this case is arguably intentional. Millette contends that Camus/DEK committed fraudulent misrepresentation and thus cannot be apportioned fault. The district court let the jury decide whether Camus/DEK were intentional tortfeasors. The court included Camus/DEK on the verdict form but also instructed the jury "not to apportion fault to any person/entity found to have intentionally caused injury to Millette." (Dkt. 472 at 10.) The jury eventually apportioned 35% of the fault to Camus/DEK. Millette contends that the district court erred by leaving to the jury the question of whether Camus/DEK committed intentional torts. According to Millette, the issue of whether a nonparty committed an intentional tort presents a question of law that must be decided by the court. We agree.[5]

---

[5]   Millette also argues that, even if the court did not err by submitting the intentional-tortfeasor question to the jury, the evidence at trial showed that Camus/DEK engaged in intentional misrepresentations and thus the evidence does not support apportioning fault to Camus/DEK. We do not address this argument in light of our conclusion that the court must decide whether a nonparty committed an intentional tort. We also cannot evaluate whether Camus/DEK's conduct was intentional because Nadeau has not plead any facts showing why Camus/DEK should be apportioned fault.

Florida's comparative fault statute requires the court to determine whether the statute applies to a given case. Fla. Stat. § 768.81(4)(a) explains that the statute applies to "negligence cases." And, in determining whether a case falls within the term "negligence cases," the statute requires that "*the court* shall look to the substance of the action and not the conclusory terms used by the parties." Fla. Stat. § 768.81(4)(a) (emphasis added). The parties do not dispute that Millette's claim against Nadeau includes a claim of negligence.

Section 768.81(4)(b) further explains that the statute does not apply "to any action based upon an intentional tort." Florida courts have interpreted this language to mean that a defendant charged with negligence cannot apportion fault to a nonparty whose intentional conduct was a foreseeable result of the defendant's alleged negligence. *See Merrill*, 705 So. 2d at 562. We conclude that §§ 768.81(4)(a) and (b), read together, make clear that the court has the gate-keeping responsibility to determine whether a nonparty has committed an intentional tort and thus cannot be apportioned fault. *See also Petit-Dos v. Sch. Bd. of Broward Cnty.*, 2 So. 3d 1022, 1024 (Fla. 4th DCA 2009) (stating that the determination of an intentional tort is "an objective inquiry, decided as a matter of law") (citation omitted). The court erred in leaving the question to the jury.

We cannot accept Nadeau's argument that, even if submitting the intentional-tortfeasor question to the jury was error, the error is harmless because the jury properly considered and rejected any argument that Camus/DEK were intentional tortfeasors. The jury was instructed "not to apportion fault to any person/entity found to have intentionally caused injury to Millette." (Dkt. 472 at 10.) But no legal definition of an intentional tort was provided. *See, e.g., D'Amario v. Ford Motor Co.,* 806 So. 2d 424, 438 (Fla. 2001) (defining an intentional tort as "one in which the actor exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury. . ."). Moreover, the statute requires the judge to decide the issue.

Because the court should have decided the intentional-tortfeasor issue, we must vacate the district court's judgment to the extent that it apportioned fault. On remand, the court must determine whether nonparties committed intentional torts. If so, they cannot be apportioned fault under Fla. Stat. § 768.81(4)(b) for such intentional torts.

2.    Apportionment of fault among nonparties in contractual privity with Millette

Millette contends that the district court erred in allowing the jury to apportion fault to Camus/DEK and Webster Bank because they had a contract with Millette. She makes two arguments in support of this contention. We reject both of them.

Millette first argues that Camus/DEK and Webster Bank had contracts with Millette and therefore cannot be apportioned fault because the Florida economic loss rule prevents Millette from suing them in tort. Under the economic loss rule, a party to a contract may not pursue a claim in tort solely for economic losses unless the party breaching the contract has committed a tort which is distinguishable from or independent of the breach of contract. *See, e.g., Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536-37 (Fla. 2004); *see also Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 902 (Fla. 1987). Because the economic loss rule precludes Millette from suing Camus/DEK and Webster Bank in tort, she reasons that it is improper for Nadeau to decrease its percentage of fault (and Millette's recovery) by apportioning fault to these persons and entities. We are not persuaded.

Millette's inability to recover in tort from a nonparty due to the economic loss rule does not preclude apportioning fault to that nonparty. Florida courts have repeatedly interpreted the comparative fault statute to allow for apportionment of fault even if the plaintiff could not sue the nonparty in tort. As the Florida Supreme Court explained, "the only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, *regardless of whether they have been or could have been joined as*

*defendants*." *Y.H. Invs., Inc. v. Godales*, 690 So. 2d 1273, 1277 (Fla. 1997) (emphasis in original) (quoting *Fabre*, 623 So. 2d at 1185). As a result, a nonparty who enjoys an immunity from suit by the plaintiff can still be apportioned fault. *See id.* at 1278 (holding that apportionment of fault to parent was appropriate even though parent is immune from suit by child plaintiff); *Allied-Signal, Inc. v. Fox*, 623 So. 2d 1180, 1182 (Fla. 1993) (holding that apportionment of fault to employer was appropriate even though employer is immune under workers' compensation law from suit by employee); *Fabre*, 623 So. 2d at 1185-86 (holding that apportionment of fault to spouse was appropriate even though spouse was immune from suit by the other spouse). Similar to a tort immunity, the economic loss rule precludes Millette from suing nonparties in tort under certain circumstances. But the inability to sue Camus/DEK and Webster Bank in tort does not preclude apportioning fault to these entities.

Millette also argues that Camus/DEK and Webster Bank cannot be apportioned fault because they owe no duty in tort to Millette. Millette reasons that, because the economic loss rule prevents her from suing Camus/DEK and Webster Bank in tort, they do not owe a duty of reasonable care to Millette and thus cannot be apportioned fault for causing her damages. We disagree. The purpose of the economic loss rule is to prevent parties to a contract from "'circumventing the allocation of losses set

11

forth in their contract by bringing an action for economic loss in tort' and thereby 'seeking to obtain a better bargain than originally made.'" *Cessna Aircraft Co. v. Avior Techs., Inc.*, 990 So. 2d 532, 537 (Fla. 3d DCA 2008) (quoting *Indem. Ins. Co.*, 891 So. 2d at 536). Considering that the purpose of the economic loss rule is to prevent a tort duty from intruding on the bargained-for allocation of loss, permitting Nadeau to apportion fault to Camus/DEK and Webster Bank makes sense. Nadeau has no contract with Millette, so the apportioning of fault to Camus/DEK and Webster Bank does not avoid or alter any of Nadeau's contractual obligations. To the contrary, allowing Nadeau to apportion fault to Camus/DEK and Webster Bank is consistent with the policy underlying § 768.81–to require a defendant to pay for the plaintiff's damages "only in proportion to the percentage of fault by which that defendant contributed to the accident." *Fabre*, 623 So. 2d at 1185.

While we conclude that a nonparty may be apportioned fault even though that nonparty has a contract with the plaintiff, we question whether apportioning fault to Webster Bank was appropriate under the facts of this case. *See Armetta v. Clevetrust Realty Investors*, 359 So. 2d 540, 543 (Fla. 4th DCA 1978) (citing *Schaeffer v. Gilmer*, 353 So. 2d 847 (Fla. 1st DCA 1977) ("A lender owes no duty to others to supervise the construction and development of projects which it has financed."); *Sobi v. First South Bank, Inc.*, 946 So. 2d 615, 617 (Fla. 1st DCA 2007) ("[U]nder Florida

12

law, as a general rule a lender has no liability for construction defects."). No party has cited these cases or discussed the general duty of a lender under Florida law. We therefore do not address whether reasons independent of the presence of a contract preclude the apportionment of fault to Webster Bank. Because other issues require a new trial on the apportionment of fault, we leave to the district court the issue of whether Nadeau can allege and present proof of Webster Bank's negligence under Florida law.

3. Apportionment of fault among joint tortfeasors

Millette argues that the district court erred by including Todd Smith and Steve Cummings on the verdict form for apportionment of fault because they were not joint tortfeasors. Millette also argues that the district court erred in denying Millette's requested jury instruction regarding joint and successive tortfeasors.

We cannot address whether Smith and Cummings are joint tortfeasors because, as noted, Nadeau has not plead any facts outlining the basis for apportioning fault to Smith and Cummings.

B. Tarnove's Rule 50(a) Motion

The district court granted Tarnove's Rule 50(a) motion for judgment as a matter of law on Millette's claim that Tarnove breached her fiduciary duty as closing

agent.[6] Millette's breach of fiduciary duty claim is based on two alleged breaches. We address each in turn.

1.    Failure to provide title report

Millette argues that Tarnove breached her fiduciary duty as closing agent because she did not provide Millette with a title report before the closing of the purchase of the property, and the title report would have revealed two pre-existing mortgages on the property. Millette's property was released from the pre-existing mortgages when those mortgages were paid using the closing proceeds due to DEK, the seller. But, the satisfaction of the mortgages was not executed and recorded until fifteen months after closing, in December 2006. The district court granted Tarnove's Rule 50(a) motion on this claim because Millette did not produce evidence that she suffered damages as a result of Tarnove's failure to provide the title report. Millette claims this was error, arguing that she suffered damages because: (1) she would have exercised her right under the purchase contract to rescind the entire transaction had she received a title report advising her of the pre-existing mortgages; and (2) she had to pay loan interest payments for fifteen months even though Webster Bank did not have a first-lien position and Millette did not have clear title.

---

[6] Millette also sued Tarnove for professional negligence, and the district court granted Tarnove's Rule 50(a) motion on this claim as well. Millette does not challenge on appeal the dismissal of her claim for professional negligence.

We agree with the district court that Millette produced no evidence showing that Tarnove's failure to provide a title report caused damage to Millette. First, Millette did not have the contractual right to rescind the transaction due to a potential title defect at closing; instead, Paragraph Eight of the Purchase Contract provides that Tarnove could have cured any title defects by the closing date or within a reasonable time. (Dkt. 636-3 at 2.) Second, Millette did not suffer damages by paying interest on her loan with Webster Bank for fifteen months while Webster Bank did not have first-lien position. Even if Webster Bank did not have first-lien position, this fact does not relieve Millette of the obligation to pay the principal and interest on the loan. The district court did not err in granting Tarnove's Rule 50(a) motion on the breach of fiduciary duty claim involving the title report.

2. Alteration of HUD-1 settlement statement

Millette argues that Tarnove breached her fiduciary duty as closing agent because she altered the HUD-1 settlement statement without Millette's consent. After Millette closed on the purchase of the property and home, Webster Bank requested that Tarnove change the HUD-1 statement to reflect a charge to Millette of $8,790 for a real estate broker commission. Tarnove prepared and faxed the changed statement to Webster Bank. Tarnove did not inform Millette about Webster Bank's request and Millette did not consent to an alteration of the HUD-1 statement. As a result of the

15

alteration, Millette was required to pay an additional $8,790 for a real estate broker commission.

The district court granted Tarnove's Rule 50(a) motion on this claim, concluding that Millette failed to produce any evidence of damages. (Dkt. 611 at 1185-86.) While we agree that Millette did not produce any evidence of damages stemming from Tarnove's failure to produce a title report, the alleged alteration of the HUD-1 statement is a different matter. Contrary to the district court's no-damage finding, the record shows that Millette did suffer some damages as a result of the alteration of the closing statement. Her construction loan was charged an additional $8,790, when the construction holdback was reduced from $207,210 to $198,420. Thus, Millette's purported failure to prove damages does not entitle Tarnove to judgment as a matter of law on the claim that she breached her fiduciary duty by altering the HUD-1 settlement statement.[7]

---

[7] Our conclusion that Millette has produced some evidence of damage does not foreclose the possibility that Tarnove may be entitled to judgment for some alternative reason. For example, on this record, we cannot be sure that Tarnove's conduct breached her fiduciary duty to Millette. That issue was not addressed during the trial and has not been addressed on appeal. We therefore leave to the district court the issue of whether Tarnove breached her duty as closing agent by submitting the altered document to Webster Bank.

Because we have vacated the Rule 50(a) judgment in favor of Tarnove, we do not reach the issue of whether Tarnove is entitled to attorney's fees pursuant to Fla. Stat. § 768.79.

## IV. CONCLUSION

The district court erred by leaving to the jury the issue of whether Camus/DEK committed intentional torts. As a result, we vacate the judgment against Nadeau to the extent it apportioned fault and remand for a new trial on all apportionment issues.

We note that our vacation of the district court's judgment as to apportionment does not affect the jury's determination of damages, fixed at $225,000. *See Nash*, 678 So. 2d at 1263-64 ("[A] reversal precipitated by *Fabre* errors does not affect the determination of damages."). For the negligence claim against Nadeau, the remand is confined to the issue of apportioning Millette's damages.

The district court did not err in granting Tarnove's Rule 50(a) motion on the claim that Tarnove breached her duty by failing to provide a title report. The district court did err in granting Tarnove's Rule 50(a) motion on the claim that Tarnove breached her duty by altering the HUD-1 settlement statement; we vacate the judgment in favor of Tarnove. We do not foreclose the possibility that Tarnove may be entitled to judgment for a reason other than Millette's failure to prove damages for this claim. We vacate the award of attorney's fees to Tarnove and remand for further proceedings.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.